1  **Mark E. Haddad (SBN 205945), mhaddad@sidley.com**
   **David R. Carpenter (SBN 230299), drcarpenter@sidley.com**
2  **SIDLEY AUSTIN LLP**
   **555 West Fifth Street**
3  **Los Angeles, California 90013**
   **Telephone: (213) 896-6000**
4  **Facsimile: (213) 896-6600**

5  **Marie L. Fiala (SBN 79676), mfiala@sidley.com**
   **SIDLEY AUSTIN LLP**
6  **555 California Street, Suite 2000**
   **San Francisco, California 94104**
7  **Telephone: (415) 772-1200**
   **Facsimile: (415) 772-7400**

8

9  **Jonathan F. Cohn (*pro hac vice* application pending),**
   **jcohn@sidley.com**
   **1501 K Street, N.W.**
10 **Washington, D.C. 20005**
   **Telephone: (202) 736.8000**
11 **Facsimile: (202) 736.8711**

12 **Attorneys For Defendants**
   **Bayer Corporation and Bayer Healthcare LLC**

13

14                    **UNITED STATES DISTRICT COURT**

15                   **NORTHERN DISTRICT OF CALIFORNIA**

16                       **SAN FRANCISCO DIVISION**

17 | CENTER FOR SCIENCE IN THE PUBLIC | **Case No. 09-cv-05379-JSW** |
   | INTEREST, a non-profit membership | **Assigned to: Hon. Jeffrey S. White** |
18 | organization. on behalf of itself and on behalf | |
   | of its members, | **NOTICE OF MOTION AND MOTION TO** |
19 | | **DISMISS; MEMORANDUM OF POINTS** |
   | Plaintiff, | **AND AUTHORITIES IN SUPPORT** |
20 | | |
   | v. | **[Fed. R. Civ. P. 12(b)(6), 8, 9(b)]** |
21 | | |
   | BAYER CORPORATION, BAYER | **Complaint Filed:       September 30, 2009** |
22 | HEALTHCARE LLC, and DOES 1-10., | **Case Removed:        November 13, 2009** |
23 | Defendant. | **Date:        February 19, 2010** |
   | | **Time:        9:00 a.m.** |
24 | | **Place:       Courtroom 11** |

25

26

27

28

## NOTICE OF MOTION AND MOTION

TO PLAINTIFF AND ITS ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on February 19, 2010 at 9:00 a.m., or as soon thereafter as counsel may be heard, in Courtroom 11 of the above-entitled court, located at 450 Golden Gate Ave., San Francisco, California 94102, Defendants Bayer Corporation and Bayer Healthcare LLC will and hereby do move pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss the Complaint for failure to state a claim upon which relief can be granted.  The motion is based on this notice of motion, the memorandum of points and authorities attached hereto, and all other papers and pleadings on file hereon, and the argument of counsel at the hearing of this motion.

The motion requests dismissal of the Complaint on the grounds that:  (1) Plaintiff is an organization that does not allege injury to itself and thus lacks statutory standing to sue under the California Consumer Legal Remedies Act, Cal. Civ. Code § 1750 *et seq.*, and Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.*; (2) Plaintiff has not, in any event, pleaded facts to establish "associational standing," as it has failed to allege facts to show that any of its purported members has standing to sue in his own right, that CSPI has a "membership" it can represent, and that the participation of any such "members" would be unnecessary for the claims asserted; and (3) Plaintiff's claim for a declaratory judgment fails because Plaintiff has not stated an actual controversy warranting declaratory relief.

Dated: November 20, 2009                    SIDLEY AUSTIN LLP


By:  /s/ Mark E. Haddad
     *Attorneys for Defendants Bayer Corporation*
     *and Bayer HealthCare Pharmaceuticals Inc.*

1

2

# <u>TABLE OF CONTENTS</u>

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ................................................................. 1

INTRODUCTION AND SUMMARY OF ARGUMENT ........................................................... 1

STATEMENT OF FACTS ........................................................................................................ 2

ARGUMENT .............................................................................................................................. 3

      I.      CSPI Lacks Standing Because the UCL and CLRA Do Not Permit Associational Standing ........................................................................................... 3

      II.     Even if the UCL and CLRA Permitted Associational Standing, CSPI Has Failed to Allege Required Elements for Associational Standing.......................................... 5

              **A.**      **CSPI Has Not Sufficiently Alleged That Any of Its Members Would Have Standing to Sue Under the UCL or CLRA** ........................................... 6

              **B.**      **CSPI Has Failed to Allege Other Elements of Associational Standing** 8

      III.    CSPI's Claim for Declaratory Relief Fails As Well ............................................. 10

CONCLUSION............................................................................................................................ 12

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## TABLE OF AUTHORITIES

2

Page(s)

3 CASES

4 *Am. Legal Found. v. FCC,*
   808 F.2d 84 (D.C. Cir. 1987) ...................................................................................9
5

6 *Amalgamated Transit Union v. Superior Court,*
   46 Cal. 4th 993 (2009) ..................................................................................... passim
7

*Ashcroft v. Iqbal,*
8  __ U.S. __, 129 S. Ct. 1937 (2009)...........................................................................8

9 *Ball v. FleetBoston Fin. Corp.,*
   164 Cal. App. 4th 794 (2008) ..................................................................................10
10

11 *Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007)...................................................................................................8
12

13 *Bhd. of Teamsters & Auto Truck Drivers v. Unemployment Ins. Appeals Bd.,*
   190 Cal. App. 3d 1515 (1987) ...................................................................................5
14

15 *Brownfield v. Bayer Corp,*
   No. 09-cv-00444, 2009 WL 1953035 (E.D. Cal. July 6, 2009)....................................1, 6, 7, 8

16 *Buckland v. Threshold Enters., Ltd.,*
   155 Cal. App. 4th 798 (2007) ....................................................................................6
17

18 *Cal. Grocers Ass'n, Inc. v. Bank of Am.,*
   22 Cal. App. 4th 205 (1994) ......................................................................................5
19

20 *Cal. Serv. Station & Auto. Repair Ass'n v. Union Oil Co.,*
   232 Cal. App. 3d 44 (1991) ......................................................................................12

21 *Cattie v. Wal-Mart Stores, Inc.,*
   504 F. Supp. 2d 939 (S.D. Cal. 2007).......................................................................7
22

23 *City of Los Angeles v. Lyons,*
   461 U.S. 95 (1983).....................................................................................................11

24 *County of San Diego v. State,*
   164 Cal. App. 4th 580 (2008) ..................................................................................10
25

26 *Dillon Police Officers' Ass'n v. City of Dillon,*
   333 Fed. Appx. 195 (9th Cir. 2009)...........................................................................9

27 *FEC v. GOPAC, Inc.,*
   897 F. Supp. 615 (D.D.C. 1995).................................................................................9
28

ii

*Fund Democracy, LLC v. SEC*,
   278 F.3d 21 (D.C. Cir. 2002) ........................................................................8, 9

*Gest v. Bradbury*,
   443 F.3d 1177 (9th Cir. 2006) .............................................................................11

*Gettman v. Drug Enforcement Admin.*,
   290 F.3d 430 (D.C. Cir. 2002) ..............................................................................8

*Hall v. Time Inc.*,
   158 Cal. App. 4th 847 (2008) ...............................................................................7

*Hunt v. Wash. Apple Adver. Comm'n*,
   432 U.S. 333 (1977).......................................................................................5, 8, 9

*In re Actimmune Mktg. Litig.*,
   No. C 08-02376, 2009 WL 3740648 (N.D. Cal. Nov. 6, 2009)......................1, 7, 8

*In re Bextra and Celebrex Mktg. Sales Practices & Prod. Liab. Litig.*,
   495 F. Supp. 2d 1027,1038 (N.D. Cal. 2007) .........................................................9

*In re Bledsoe*,
   569 F.3d 1106 (9th Cir. 2009) ...............................................................................4

*In re Ford Motor Co. E-350 Van Prods. Liab. Litig.*,
   MDL No. 1687, 2008 WL 4126264 (D.N.J. Sept. 2, 2008) ....................................5

*In re Napster, Inc. Copyright Litig.*,
   354 F. Supp. 2d 1113 (N.D. Cal. 2005) ................................................................12

*In re Tobacco II Cases*,
   46 Cal. 4th 298 (2009) .......................................................................................1, 6

*Kearns v. Ford Motor Co.*,
   567 F.3d 1120 (9th Cir. 2009) ........................................................................6, 7, 8

*Klein v. Avis Rent a Car Sys. Inc.*,
   No. CV-08-0659, 2009 WL 151521 (C.D. Cal. Jan. 21, 2009) ............................10

*Laster v. T-Mobile USA, Inc.*,
   407 F. Supp. 2d 1181 (S.D. Cal. 2005)...............................................................6, 7

*Medina v. Safe-Guard Prods.*,
   164 Cal. App. 4th 105 (2008) ...............................................................................7

*Meyer v. Sprint Spectrum L.P.*,
   45 Cal. 4th 634 (2009) .........................................................................................11

*Mulato v. WMC Mortgage Corp.*,
   No. C-09-03443, 2009 WL 3561536 (N.D. Cal. Oct. 27, 2009) ..........................10

iii

*Network Signatures, Inc. v. Citibank, N.A.*,
  No. CV 08-0718, 2008 WL 5216032 (C.D. Cal. Dec. 4, 2008) ............................................10

*New.Net, Inc. v. Lavasoft*,
  356 F. Supp. 2d 1071 (C.D. Cal. 2003) ...........................................................................11

*Otay Land Co. v. Royal Indem. Co.*,
  169 Cal. App. 4th 556 (2008) ........................................................................................10

*Paek v. Plaza Home Mortgage, Inc.*,
  No. CV 09-1729, 2009 WL 1668576 (C.D. Cal. June 15, 2009) ......................................10

*Pearson v. Shalala*,
  164 F.3d 650 (D.C. Cir. 1999).........................................................................................11

*Prohias v. Pfizer, Inc.*,
  485 F. Supp. 2d 1329 (S.D. Fla. 2007) .............................................................................9

*S.D. County Gun Rights Comm. v. Reno*,
  98 F.3d 1121 (9th Cir. 1996) ..........................................................................................11

*Stonehouse Homes v. City of Sierra Madre*,
  167 Cal. App. 4th 531 (2008) ........................................................................................10

*Sun Microsys., Inc. v. Microsoft Corp.*,
  188 F.3d 1115 (9th Cir. 1999) ........................................................................................12

*Suzuki v. Hitachi Global Storage Techs., Inc.*,
  No C06-07289, 2007 WL 2070263 (N.D. Cal. July 17, 2007).........................................7

*United States v. Washington*,
  759 F.2d 1353 (9th Cir. 1985) ........................................................................................11

*Vega v. JPMorgan Chase Bank, N.A.*,
  --- F. Supp. 2d ---, 2009 WL 2731039 (E.D. Cal. Aug. 26, 2009) .................................10

*Wright v. Gen. Mills, Inc.*,
  No. 08 cv 1532, 2009 WL 3247148 (S.D. Cal. Sept. 30, 2009) ........................................8

**FEDERAL STATUTES**

28 U.S.C. § 2201.............................................................................................................1, 10

**CALIFORNIA STATUTES**

Cal. Bus. & Prof. Code § 17204 ..................................................................................1, 3, 6

Cal. Civ. Code § 1761(d) ....................................................................................................4

Cal. Civ. Code § 1780(a) .............................................................................................1, 3, 4, 6

iv

Cal. Civ. Proc. Code § 1060 .................................................................................................10

Cal. Civ. Proc. Code § 1061 .................................................................................................10

**FEDERAL RULES**

Fed. R. Civ. P. Rule 9(b)........................................................................................................8

Fed. R. Civ. P. Rule 12(b)(6) .................................................................................................1

MOTION TO DISMISS

## MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiff Center for Science in the Public Interest ("CSPI") seeks to litigate allegations that Defendants Bayer Corporation and Bayer Healthcare LLC (collectively, "Bayer") misleadingly promoted the health benefits of certain multivitamins.  CSPI, however, does not allege that Bayer's conduct injured CSPI.  Instead, CSPI sues on behalf of unidentified "members," who allegedly purchased the products at unspecified times for unspecified reasons.  CSPI lacks standing under the relevant state laws, and its claims should be dismissed pursuant to Rule 12(b)(6).

First, CSPI's claims are precluded by the express standing requirements of the two state statutes CSPI invokes, the Consumer Legal Remedies Act ("CLRA") and Unfair Competition Law ("UCL").  *See* Cal. Civ. Code § 1780(a); Cal. Bus. & Prof. Code § 17204.  Under *Amalgamated Transit Union v. Superior Court*, 46 Cal. 4th 993 (2009), standing under the UCL and CLRA is limited to plaintiffs who themselves have been injured by the challenged practice.  Neither statute permits uninjured organizations – like CSPI here – to sue on behalf of their members.  This alone requires dismissal of the Complaint with prejudice.

Second, even if these state laws permitted associations to sue on behalf of their members, CSPI has not pleaded sufficient facts to invoke "associational standing."  CSPI has failed to allege that any purported member even heard or read the challenged marketing claims, much less actually relied on them, as required by the UCL and CLRA.  Thus, the Complaint does not indicate that any purported members have standing to sue in their own right.  *See, e.g.*, *In re Tobacco II Cases*, 46 Cal. 4th 298, 325 (2009); *In re Actimmune Mktg. Litig.*, No. C 08-02376, 2009 WL 3740648, at *11-16 (N.D. Cal. Nov. 6, 2009); *Brownfield v. Bayer Corp*, No. 09-cv-00444, 2009 WL 1953035, at *3-6 (E.D. Cal. July 6, 2009).  CSPI also has failed to plead other elements of associational standing.

Finally, because CSPI lacks standing to sue under the UCL and CLRA, its claim for a declaratory judgment that Bayer violated those statutes necessarily fails as well.  CSPI further identifies no "actual controversy," as required by 28 U.S.C. § 2201, because it fails to allege any likelihood of future injury to its members, and the Complaint itself acknowledges that Bayer has voluntarily begun revising the advertising and packaging that CSPI seeks to declare "unlawful."

1    Accordingly, the Motion to Dismiss should be granted.

2                              **STATEMENT OF FACTS**

3    Bayer Healthcare LLC markets One A Day® Men's Health Formula and One A Day®

4    Men's 50+ Advantage multivitamins ("Men's Multis").  *See* Compl. ¶ 2, 17-19 & Ex. 1.  These

5    multivitamins include, for example, Vitamins A, B, C, D, E, and K, as well as other dietary

6    supplements.[1]  One such supplement is selenium.

7           The Complaint alleges that Bayer has fraudulently and deceptively promoted the selenium in

8    the Men's Multis as providing certain prostate-health benefits.  *E.g.*, *id.* ¶¶ 1-2; *see also id.* Ex. 1.

9    The allegedly deceptive "prostate claims" include, for example, that selenium "may support prostate

10   health," that "emerging research suggests [selenium] can help prostate health," and that "emerging

11   research suggests that Selenium may reduce the risk of prostate cancer."  *See id.* ¶¶ 2, 18-23.

12   According to the Complaint, these claims appeared in media promotions and on the packaging and

13   labeling of the Men's Multis, and the Complaint alleges that they are false based largely on studies

14   published in the last year.  *See id*. ¶¶ 29-44.

15          As the Complaint and attached exhibits indicate, Bayer informed CSPI – well before this

16   action was filed – that Bayer had begun voluntarily revising its labeling and advertisements, in light

17   of these recent studies.  *See id.* Ex. 2, at 1; *see also id.* ¶ 50.  Nonetheless, CSPI maintains that it was

18   necessary to bring this action because, it asserts, "there is nothing to prevent Bayer [from] resuming

19   these prostate claims at a future date" (*id.* ¶ 6), and "CSPI had no reason to believe that Bayer's

20   actions [*i.e.*, the revisions to its advertisements and packaging] were in fact a permanent change in

21   behavior" (*id.*¶ 54).

22          CSPI thus pleads three causes of action:

23          (1)    Violation of the CLRA, specifically Civil Code § 1770(a)(5), which prohibits

24                 "representing that goods … have … characteristics, ingredients, uses, benefits, or

25                 qualities which they do not have" (*id.* ¶ 58-59);

26

27   _____

28   [1] Supplement information is found on the example of a Men's Multi packaging, attached as the last
     page of Exhibit 1 to the Complaint.

(2)     Violation of the UCL, Bus. & Prof. Code § 17200, allegedly for engaging in unlawful, unfair, and deceptive business practices by making the challenged "prostate claims" (*id.* ¶ 62);

(3)     Declaratory relief – *i.e.*, a declaration that Bayer's "prostate claims are unlawful, unfair, and fraudulent … in violation of both the [CLRA] and [UCL]" (*id.* ¶ 70).

Based on these causes of action, CSPI seeks declaratory relief and injunctive relief "enjoin[ing] Bayer from marketing its Men's Multis with prostate claims." *Id.* Prayer ¶¶ 1-3.

CSPI does not, however, allege any injury to itself. Instead, it purports to bring this action on behalf of its "members," who it only generally alleges "suffered damage and lost money in that they paid for vitamins that were not as represented." Compl. ¶ 1; *see also id.* ¶¶ 60, 68. CSPI does not even identify any "members" who purchased the Men's Multis, let alone plead any facts or circumstances regarding their unspecified purchases or any reliance on the "prostate claims" that CSPI attempts to challenge.

## ARGUMENT

### I.    CSPI Lacks Standing Because the UCL and CLRA Do Not Permit Associational Standing

The UCL allows suit only by "a person who has suffered injury in fact and has lost money or property as a result of the unfair competition." Cal. Bus. & Prof. Code § 17204 (as amended 2004). The CLRA similarly provides a right of action only to a "consumer who suffers any damage as a result of" a prohibited sales practice. Cal. Civ. Code § 1780(a). CSPI does not allege that *it* suffered any injury or damage and lost money or property. For this reason alone, CSPI lacks standing to sue under UCL or CLRA in its own right and its complaint should be dismissed.

CSPI is attempting to invoke the doctrine of "associational standing." As developed in the federal Article III context, that doctrine may allow "an association that does not have standing in its own right … to bring a lawsuit on behalf of its members." *Amalgamated Transit*, 46 Cal. 4th at 1003. In *Amalgamated Transit*, however, the California Supreme Court squarely held that associational standing is not available in UCL actions, and it more broadly ruled that associational

1   standing is unavailable where – as with CSPI's CLRA claim – applying the doctrine would be

2   inconsistent with the statutory text providing the right of action.  *Id.* at 1004-05.[2]

3         In *Amalgamated Transit*, a labor union sought to sue on behalf of its members and raised

4   claims under the UCL and Labor Code Private Attorneys General Act of 2004 ("PAGA").  The

5   California Supreme Court rejected the union's contention that the associational standing doctrine

6   was implicitly incorporated into either statute.  The court first held that, because the UCL

7   specifically allows suit only by a person who has suffered injury in fact, "[t]his standing requirement

8   is inconsistent with the federal doctrine of associational standing" – *i.e.*, claims brought by uninjured

9   organizations.  *Id.* at 1004.  The court then held that the PAGA likewise precluded associational

10  standing because the PAGA allows suit only by "'aggrieved employees,'" which is defined to mean

11  a "'person who was employed by the alleged violator and against whom one or more of the alleged

12  violations was committed.'"  *Id.* at 1004-05 (quoting statute).  The court explained that because the

13  union was not itself an "aggrieved employee," it lacked standing.  *Id.* at 1005.  The court concluded:

14        To summarize, a plaintiff has standing to bring an unfair competition
          law action only if the plaintiff has suffered "injury in fact", and a
15        plaintiff has standing to bring an action under the Labor Code Private
          Attorneys General Act of 2004 only if the plaintiff is an "'aggrieved
16        employee.'"  *Associations suing under either law are not exempt from
          these express statutory standing requirements.*
17

18  *Id.* (citations omitted) (emphasis added).

19        *Amalgamated Transit* is controlling here.  Plainly, it precludes CSPI from asserting claims

20  under the UCL based on associational standing.

21        By the same reasoning, CSPI lacks standing under the CLRA.  Analogous to the PAGA, the

22  CLRA specifically allows suit only by a "consumer who suffers any damage," Civil Code § 1780(a),

23  and "consumer" is specifically defined to mean "an individual who seeks or acquires, by purchase or

24  lease, any goods or services for personal, family, or household purposes," *id.* § 1761(d).  Even prior

25  to *Amalgamated Transit*, courts construed the CLRA standing provision strictly as limited to

26  individual consumers (natural persons) and as precluding suit by associations and organizations.  *See*

27

28  [2] The California Supreme Court's interpretation of the relevant state law is, of course, binding on
    this Court.  *See In re Bledsoe*, 569 F.3d 1106, 1109 (9th Cir. 2009).

1    *Cal. Grocers Ass'n, Inc. v. Bank of Am.*, 22 Cal. App. 4th 205, 217 (1994) (trade organization lacked

2    standing because it was not a "consumer" under § 1761(d)); *see also In re Ford Motor Co. E-350

3    Van Prods. Liab. Litig.*, MDL No. 1687, 2008 WL 4126264, at *26 (D.N.J. Sept. 2, 2008) (rejecting

4    CLRA claim by nonprofit church organization that purchased good at issue). Just as a labor union is

5    not an "aggrieved employee" able to sue under the PAGA, CSPI is not a "consumer" able to sue

6    under the CLRA. CSPI is "not exempt from these express statutory standing requirements."

7    *Amalgamated Transit*, 46 Cal. 4th at 1005.

8           Accordingly, the Complaint should be dismissed with prejudice on this basis alone. CSPI is

9    not a consumer or purchaser of multivitamins, and associational standing, as a matter of law, is not

10   permitted under either the UCL or CLRA. There is no possible way for CSPI to amend its

11   Complaint to establish its standing to bring this action.

12   **II.    Even if the UCL and CLRA Permitted Associational Standing, CSPI Has Failed to
           Allege Required Elements for Associational Standing**

13          Even if the UCL and CLRA were construed – contrary to their plain language and

14   *Amalgamated Transit* – as permitting associational standing, CSPI's action would still have to be

15   dismissed. Where state law has been interpreted as allowing associations to sue on behalf of their

16   members, it incorporates and requires the same elements as the federal doctrine: (1) members of the

17   organization must have standing to sue in their own right; (2) the interests the organization seeks to

18   protect must be germane to its purpose; and (3) neither the claim asserted nor the relief requested

19   must require the participation of individual members in the lawsuit. *See Bhd. of Teamsters & Auto

20   Truck Drivers v. Unemployment Ins. Appeals Bd.*, 190 Cal. App. 3d 1515, 1522 (1987) (following

21   *Hunt v. Wash. Apple Adver. Comm'n* , 432 U.S. 333, 343 (1977));[3] *see also Amalgamated Transit*,

22   46 Cal. 4th at 1004 (citing *Hunt* test for elements to show if federal associational standing doctrine

23   were incorporated into state law). CSPI cannot meet these requirements for several reasons.

24

25

---

26   [3] In *Teamsters*, the action was a petition for writ of mandate from administrative rulings under a
     statute that allowed such petitions to be brought by any "'party beneficially interested.'" *See

27   Teamsters*, 190 Cal. App. 3d at 1521 (citing Cal. Civ. Pro. Code § 1086). The court held that a
     union suing on behalf of its members was a beneficially interested party under the statute, so long as

28   the requirements of associational standing were met. *Id.* at 1521-23.

**A. CSPI Has Not Sufficiently Alleged That Any of Its Members Would Have Standing to Sue Under the UCL or CLRA**

First, CSPI has failed to allege facts indicating that any of its purported members have standing to sue in their own right. As noted above, the UCL and CLRA both require that the plaintiff has suffered injury or damage "as a result of" the challenged practice. Cal. Bus. & Prof. Code § 17204; Cal. Civ. Code § 1780(a). It is now established that, in a case such as this alleging false advertising and misrepresentations, the "as a result of" language requires the plaintiff to plead (and ultimately to show) "actual reliance" – *i.e.*, that the misrepresentations "played a substantial part … in influencing his decision" and that, but for the challenged conduct, the purchase would not have been made. *In re Tobacco II Cases*, 46 Cal. 4th 298, 325-27 (2009) (interpreting UCL); *see also Buckland v. Threshold Enters., Ltd.*, 155 Cal. App. 4th 798, 810-11 (2007) (reliance required for UCL and CLRA claims based on deceptive marketing and product packaging); *see also, e.g.*, *Brownfield v. Bayer Corp*, No. 09-cv-00444, 2009 WL 1953035, at *3 (E.D. Cal. July 6, 2009) (explaining, as to UCL and CLRA claims: "[B]ecause Plaintiffs' claims are based on allegations of false advertising, Plaintiffs must allege they relied on the false advertising."); *Laster v. T-Mobile USA, Inc.*, 407 F. Supp. 2d 1181, 1194 (S.D. Cal. 2005) (same for UCL claims).

CSPI fails to make any such allegations. Instead, it alleges only in the most general, conclusory terms that unspecified members purchased the Men's Multis. *See* Compl. ¶¶ 1, 60, 68 ("CSPI's members have suffered damage and lost money in that they paid for vitamins that were not as represented."). CSPI does not identify who made these purchases or when the purchases were made. Nor does it allege any basis for its information or belief that any members in fact purchased the Men's Multis. Even if one assumes that some members had purchased the Bayer products, CSPI fails to allege what such members heard or read in connection with such transactions. Nowhere in its Complaint does CSPI allege that any member relied on any of the challenged prostate claims and that, absent such representations, they would not have made their purchases. CSPI similarly fails to allege facts showing economic loss or injury.

Courts consistently grant motions to dismiss claims based on such conclusory and deficient allegations, and even where the allegations are far more specific than those here. *See, e.g.*, *Kearns v.*

*Ford Motor Co.*, 567 F.3d 1120, 1125-26 (9th Cir. 2009) (affirming dismissal of UCL claims for unfair and fraudulent practices, despite allegation of reliance, where plaintiff failed to allege what advertisements or sales materials he saw and what was material to him); *In re Actimmune Mktg. Litig.*, No. C 08-02376, 2009 WL 3740648, at *11-16 (N.D. Cal. Nov. 6, 2009) (dismissing CLRA and UCL claims for fraudulent and unfair practices for failure to plead sufficient facts showing reliance and finding generalized allegations of exposure to false advertising insufficient); *Brownfield*, 2009 WL 1953035, at *4-6 (dismissing UCL and CLRA false advertising claims for failure to allege facts indicating that they saw any challenged ads and relied on them); *Suzuki v. Hitachi Global Storage Techs., Inc.*, No. C06-07289, 2007 WL 2070263, at *6 (N.D. Cal. July 17, 2007) (CLRA claim dismissed where plaintiff did not allege seeing and relying on challenged statements); *Cattie v. Wal-Mart Stores, Inc.*, 504 F. Supp. 2d 939, 946-47 (S.D. Cal. 2007) (dismissing CLRA and UCL claims for failing to plead reliance); *Laster*, 407 F. Supp. 2d at 1194 (dismissing UCL claims because "none of the named Plaintiffs allege that they saw, read, or in any way relied on the advertisements"); *see also, e.g., Medina v. Safe-Guard Prods.*, 164 Cal. App. 4th 105, 114 (2008) (dismissing UCL claim for failure to allege that allegedly unlawful sale of insurance caused plaintiff to make purchase or pay more than he otherwise would have paid); *Hall v. Time Inc.*, 158 Cal. App. 4th 847, 855-58 (2008) (agreeing with *Laster* and *Cattie* and affirming dismissal of UCL claim alleging fraudulent and unfair conduct for failure to plead causation and reliance).

The Complaint's defects are all the more blatant because "Rule 9(b)'s heightened pleading standards apply to claims for violations of the CLRA and UCL" arising out of allegedly fraudulent conduct. *Kearns*, 567 F.3d at 1125; *see also, e.g., Actimmune*, 2009 WL 3740648, at *8, 11-14; *Brownfield*, 2009 WL 1953035, at *5. Here, CSPI's claims are expressly based on "fraudulent" conduct. *See, e.g.*, Compl. ¶¶ 4, 45, 58-60, 62, 70; *see also id.* ¶ 1 (alleging that Bayer "unconscionably deceived" CSPI's members); *id.* Ex. 1, at 1 (CSPI letter threatening suit "for fraudulent and deceptive practices in the marketing and sale" of the Men's Multis).[4]  Accordingly,

---

[4] It is immaterial that CSPI also alleges that Bayer's conduct was "unlawful" or "unfair." The allegedly false prostate claims are the only conduct forming the basis for the claims. *See, e.g.*, Compl. ¶¶ 63-67, 70-71. The Ninth Circuit has squarely held that when a complaint alleges a unified course of conduct sounding in fraud, Rule 9(b) applies to the entire claim, even if alternative legal bases for the violation are alleged. *Kearns*, 567 F.3d at 1127; *see also Actimmune*, 2009 WL

1  CSPI is required to – but plainly did not – "state with particularity" the circumstances of the alleged

2  fraud.  Fed. R. Civ. P. 9(b); *see also Kearns*, 567 F.3d at 1125-26 (plaintiff must set forth the who,

3  what, when, where, and how of the alleged misconduct).

4       Even under Rule 8 standards, the Complaint's allegations are manifestly deficient, as CSPI

5  would be required to set forth *facts* – not mere conclusions – indicating a right to a relief.  *See Bell*

6  *Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (plaintiff's obligation "requires more than labels

7  and conclusions, and a formulaic recitation of the elements of a cause of action will not do….

8  Factual allegations must be enough to raise a right to relief above the speculative level.").  A

9  pleading is insufficient where, as here, "it tenders naked assertions devoid of further factual

10  enhancement." *Ashcroft v. Iqbal*, __ U.S. __, 129 S. Ct. 1937, 1949 (2009) (alteration and quotation

11  omitted)); *see also, e.g.*, *Wright v. Gen. Mills, Inc.*, No. 08 cv 1532, 2009 WL 3247148, at *5 (S.D.

12  Cal. Sept. 30, 2009) (finding that "sparse allegation of injury-in-fact" – that allegedly deceptive

13  product labeling caused purchases – did not meet the *Twombly/Iqbal* pleading standard or Rule

14  9(b)); *supra* at p. 7 (collecting cases dismissing complaints under Rule 8 as well as Rule 9(b)).

15       **B.    CSPI Has Failed to Allege Other Elements of Associational Standing**

16       Even if the UCL and CLRA did not preclude associational standing, and even if CSPI's

17  failure to plead facts and elements necessary for a UCL or CLRA claim were ignored, CSPI's claims

18  must still be dismissed based on other failures specific to the associational standing doctrine.

19       First, it is not clear that CSPI even has "members" in the sense that would permit it to sue on

20  their behalf.  CSPI alleges no facts to indicate that it is a traditional membership organization, like a

21  labor union or trade association, or "the functional equivalent of a traditional membership

22  organization." *Fund Democracy, LLC v. SEC*, 278 F.3d 21, 25 (D.C. Cir. 2002) (citing *Hunt*, 432

23  U.S. at 342-45).  The 756,000 members it claims to have appear to be nothing more than subscribers

24  to a newsletter it issues, Compl. ¶ 10, and CSPI has failed to allege any of the factors suggesting that

25  it can properly deem itself their representative to litigate their rights. *See Gettman v. Drug*

26  *Enforcement Admin.*, 290 F.3d 430, 435 (D.C. Cir. 2002) (finding that magazine could not assert

27

28  3740648, at *14 (applying Rule 9(b) where plaintiff's UCL "unfair prong claims overlap[ped]
   entirely with their claims of fraud"); *Brownfield*, 2009 WL 1953035, at *5-6.

1   standing on behalf of subscribers and stating: "[R]eadership is not the same thing as membership");

2   *Fund Democracy*, 278 F.3d at 25-26 (discussing indicia of "membership," including ability to select

3   leadership and guide activities, and closeness of link between organization and its members); *Am.*

4   *Legal Found. v. FCC*, 808 F.2d 84, 89-90 (D.C. Cir. 1987) (media watchdog group lacked standing

5   to sue on behalf of its "supporters," who did not form discrete group with specific, definable

6   common interest); *FEC v. GOPAC, Inc.*, 897 F. Supp. 615, 617-19 (D.D.C. 1995) (financial

7   contributors are not equivalent to membership); *cf. In re Bextra and Celebrex Mktg. Sales Practices*

8   *& Prod. Liab. Litig.*, 495 F. Supp. 2d 1027,1038 (N.D. Cal. 2007) (dismissing consumer fraud

9   claims when associations did not and could not allege that all of their members took drug at issue).

10          Second, associational standing is not permitted if "the claim asserted [or] the relief requested

11  requires the participation of individual members in the lawsuit." *Amalgamated Transit*, 46 Cal. 4th

12  at 1004. When, for example, an organization challenges the constitutionality or propriety of a

13  governmental policy and seeks only declaratory or injunctive relief, individual participation may be

14  unnecessary to the claim or relief. Here, however, proof of reliance and the fact of individual

15  damage are elements of standing to bring a claim and must be proved at trial. Thus, participation of

16  the individual member(s) on whom CSPI relies to assert standing is necessary. In such a case,

17  associational standing is improper, even if the association seeks only declaratory or injunctive relief.

18  *See Prohias v. Pfizer, Inc.*, 485 F. Supp. 2d 1329, 1340 & n.4 (S.D. Fla. 2007) (rejecting

19  associational standing to pursue state consumer protection claims because reliance and injury were

20  elements of the claim, even if association only sought injunctive relief); *see also Hunt*, 432 U.S. at

21  344 (associational standing not proper if claim or relief requires "individualized proof" from

22  members); *Dillon Police Officers' Ass'n v. City of Dillon*, 333 Fed. Appx. 195, 197 (9th Cir. 2009)

23  (affirming dismissal of claim that would require likelihood that plaintiffs "personally" will be

24  injured, because association failed to show that any members had standing and members'

25  participation would be necessary).

26          Accordingly, for all the foregoing reasons, CSPI lacks standing to pursue the UCL and

27  CLRA claims alleged.

28

**III.     CSPI's Claim for Declaratory Relief Fails As Well**

CSPI's claim for declaratory relief is similarly defective.  The federal Declaratory Judgment Act allows a court to "declare the rights and other legal relations of any interested party" in cases involving an "actual controversy."  28 U.S.C. § 2201.[5]  CSPI's claim, however, asserts nothing more than a "disagree[ment]" over whether certain "prostate claims" violate the UCL and CLRA.  Compl. ¶ 70.  Because, for all the reasons stated above, CSPI lacks standing to pursue a claim for such violations, it has not stated any actual controversy warranting declaratory relief.  *See, e.g., Mulato*, 2009 WL 3561536, at *9 (dismissing declaratory relief claim based on same, insufficient allegations as fraud and UCL claims); *Vega v. JPMorgan Chase Bank, N.A.*, --- F. Supp. 2d ----, 2009 WL 2731039, at *12-13 (E.D. Cal. Aug. 26, 2009) (request to declare parties' "rights" as to foreclosure proceedings and property did "not establish an independent actual or present controversy" where substantive claims for relief failed); *Klein v. Avis Rent a Car Sys. Inc.,* No. CV-08-0659, 2009 WL 151521, at *4 (C.D. Cal. Jan. 21, 2009) (dismissing claim for declaratory judgment where plaintiff lacked standing under UCL); *Paek v. Plaza Home Mortgage, Inc.*, No. CV 09-1729, 2009 WL 1668576, at *4 (C.D. Cal. June 15, 2009) (dismissing "plaintiff's claim for declaratory relief . . . because it is duplicative of their other claims" that were also dismissed); *Network Signatures, Inc. v. Citibank, N.A.*, No. CV 08-0718, 2008 WL 5216032, at *2-3 (C.D. Cal. Dec. 4, 2008) (declaratory relief claims dismissed where based on statute that provided no right of action to plaintiff); *see also Ball v. FleetBoston Fin. Corp.,* 164 Cal. App. 4th 794, 800 (2008) (explaining that dismissal of underlying CLRA claim for lack of standing required dismissal of derivative declaratory claim).

Moreover, and independently, the claim fails because CSPI alleges no future injury to any member and the Complaint itself indicates that Bayer had already decided to revise its advertising and packaging to remove all prostate claims.  *See* Compl. ¶ 50; *id.* Ex. 2, at 1 ("Of course, as you

---

[5] In cases removed to federal court, the standards for declaratory judgment are generally considered a procedural matter governed by federal law.  *See Mulato v. WMC Mortgage. Corp.*, No. C-09-03443, 2009 WL 3561536, at *9 (N.D. Cal. Oct. 27, 2009).  In any event, California's declaratory judgment statute, Cal. Civ. Proc. Code  §§ 1060, 1061, similarly requires an "actual controversy" and involves essentially the same standards.  *See Stonehouse Homes v. City of Sierra Madre*, 167 Cal. App. 4th 531, 540 (2008) (discussing justiciability requirements); *County of San Diego v. State*, 164 Cal. App. 4th 580, 606 (2008) (same); *Otay Land Co. v. Royal Indem. Co.*, 169 Cal. App. 4th 556, 562-63 (2008) (equating California and federal approaches).

know, [Bayer] already decided to remove from its labels and advertising *all* of the language to which you [CSPI] are objecting." (emphasis added)).  A plaintiff seeking declaratory or injunctive relief must show she is "realistically threatened by a repetition of the violation." *Gest v. Bradbury*, 443 F.3d 1177, 1181 (9th Cir. 2006) (quotation omitted); *S.D. County Gun Rights Comm. v. Reno*, 98 F.3d 1121, 1126 (9th Cir. 1996) (requiring "very significant possibility of future harm" to warrant requested relief); *see also City of Los Angeles v. Lyons*, 461 U.S. 95, 101-05 (1983) (finding no case or controversy to support declaratory or injunctive relief where plaintiff faced no future threat of harm).  CSPI's bald speculation that Bayer might "resum[e] these prostate claims at a future date" (Compl. ¶ 6) is insufficient to state an actual, present controversy, particularly where CSPI has not alleged any likelihood that its members would continue to be deceived and injured.  To the contrary, CSPI alleges that it already sent an email to subscribers making them aware of CSPI's view of the purported truth (*id.* ¶ 56), meaning that those individuals can make their own decisions about whether to purchase the Men's Multis.

Finally, a declaratory judgment would serve no useful purpose.[6]  Even the declaratory relief CSPI seeks could not, consistent with the First Amendment, prohibit the making of "prostate claims" in the future, as any statements – which may or may not ever be made – about the relationship between dietary supplements and prostate health would have to be evaluated based on their specific content and context, and the available science at that future time.  *See Pearson v. Shalala*, 164 F.3d 650, 655-56 (D.C. Cir. 1999) (First Amendment prohibits blanket prohibition on dietary supplement health claims unless claims are "inherently misleading" and consumer confusion cannot be cured by disclaimer or qualification); *New.Net, Inc. v. Lavasoft*, 356 F. Supp. 2d 1071, 1082-84 (C.D. Cal. 2003) (noting limits on power to enjoin future speech); *cf. Washington*, 759 F.2d at 1357 ("Precise resolution, not general admonition, is the function of declaratory relief.").  The above problems – CSPI's failure to allege future injury to its members, Bayer's voluntary revisions to marketing and

---

[6] *See United States v. Washington*, 759 F.2d 1353, 1357 (9th Cir. 1985) ("Declaratory relief should be denied when it will neither serve a useful purpose in clarifying and settling the legal relations in issue nor terminate the proceedings and afford relief from the uncertainty and controversy faced by the parties."); *see also Meyer v. Sprint Spectrum L.P.*, 45 Cal. 4th 634, 648 (2009) (explaining, with respect to parallel state law, that when litigation "would have little practical effect in terms of altering parties' behavior, courts have considerable discretion … to deny declaratory relief").

packaging, and the First Amendment's protection against prior restraint – would similarly defeat any claim for injunctive relief even if CSPI could pursue claims under the UCL and CLRA.[7]

To the extent CSPI wants a generalized determination about marketing multivitamins with prostate claims, CSPI has already filed petitions with the Federal Trade Commission (*see* Compl. Ex. 1, Attachment) and the Food and Drug Administration.[8]  What CSPI may not do is assert legal claims that it has no standing or legal basis to pursue in a court.  For all these reasons, the declaratory relief claim should be dismissed.

## CONCLUSION

For the foregoing reasons, the motion should be granted in its entirety and the case dismissed with prejudice.


Respectfully submitted,

Dated: November 20, 2009                    SIDLEY AUSTIN LLP


By:   /s/ Mark E. Haddad
_____
*Attorneys for Defendants Bayer Corporation
and Bayer HealthCare Pharmaceuticals Inc.*

---

[7] *See, e.g., Sun Microsys., Inc. v. Microsoft Corp.*, 188 F.3d 1115, 1123 (9th Cir. 1999) ("[U]nder California law, … a plaintiff cannot receive an injunction for past conduct unless he shows that the conduct will probably recur."); *In re Napster, Inc. Copyright Litig.*, 354 F. Supp. 2d 1113, 1127 (N.D. Cal. 2005) (dismissing UCL claim for injunctive relief for failure to allege "any ongoing injury" to plaintiff); *Cal. Serv. Station & Auto. Repair Ass'n v. Union Oil Co.*, 232 Cal. App. 3d 44, 57 (1991) (no basis for injunctive relief where defendant voluntarily stopped practice).

[8] *See* CSPI, Press Release, *CSPI Urges FDA to Seize Stockpiles of Bayer One A Day for Men: New Evidence Undermines Bayer's Prostate Health Claims*, *at* http://www.cspinet.org/new/200906291.html (last visited Nov. 15, 2009); Letter from CSPI to FDA, dated June 29, 2009, at http://cspinet.org/new/pdf/bayer-fda-letter.pdf (last visited Nov. 15, 2009).